ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrente, *v.* MINERVA TORRES COLLAZO ET ALS., demandadas y recurridas.

*Número:* CE-93-311     *Resuelto:* 18 de noviembre de 1993

---

[1] En particular con sus Arts. 9 y 10 (4 L.P.R.A. secs. 780–781).

*Carmen L. Ocasio Torres* y *Ana L. Torres Lupiañez*, abogadas de la recurrente; *Luis Ramón Rodríguez Cintrón*, abogado de la recurrida.

PER CURIAM: Mediante el mecanismo procesal decisorio de la orden de mostrar causa revisamos la corrección jurídica de unos pagos que hiciera la peticionaria Asociación de Empleados del Estado Libre Asociado de Puerto Rico (en adelante Asociación), por concepto de seguro de vida y otro por concepto de la duplicación de ahorros, a la viuda de un socio de la Asociación que falleciera en un caso en el que hay unos hijos, menores de edad, de un matrimonio anterior de dicho socio fallecido.

## I

Conforme podemos colegir de los autos del caso, Juan Rosario Medina estuvo casado con la Sra. Minerva Torres, desde enero de 1973 hasta el 29 de octubre de 1984, procreando durante dicho matrimonio dos (2) hijas, a saber:

Wanda Jeannette y Jennette Rosario Torres. Rosario Medina ingresó a trabajar en el Gobierno de Puerto Rico en 1980, *acogiéndose al plan de seguro de vida que provee la Asociación a sus socios el 4 de junio de 1984.* Ello significa, *en cuanto al seguro de vida se refiere,* que habiéndose acogido al mismo supuestamente el 4 de junio de 1984 y habiéndose divorciado de la Sra. Minerva Torres alegadamente el 29 de octubre de ese mismo año, aparentemente *sólo estuvo pagando primas de dicho seguro, o cotizando para el mismo, un término de cuatro (4) meses mientras estuvo casado con la Sra. Minerva Torres.*

Rosario Medina alegadamente se casó con la Sra. Isabel Díaz Soto el 20 de septiembre de 1985, dama con quien permaneció casado hasta que le sobrevino la muerte el 8 de octubre de 1990; *ésto es, de los seis (6) años y tres (3) meses que Rosario Medina supuestamente estuvo pagando primas por el seguro de vida, estuvo casado con la Sra. Isabel Díaz Soto durante cinco (5) años.* Al morir, Rosario Medina alegadamente *no* había designado beneficiarios en relación con el seguro de vida que tenía con la Asociación.

Procede enfatizar el hecho, por otro lado, que durante algún momento del período de tiempo en que Rosario Medina fue empleado del Gobierno de Puerto Rico, y socio de la Asociación, éste "se acogió" al plan o beneficio de duplicación de ahorros. El mismo consiste en que, a la fecha de la muerte del socio, la Asociación le otorga a los beneficiarios designados por el socio una cantidad de dinero adicional igual a la que el socio tenía, por concepto de ahorros, a la fecha de su fallecimiento.

Habiendo fallecido Rosario Medina, y *no* habiendo designado éste beneficiarios, *ni* en relación con el seguro de vida que tenía *ni* en cuanto al plan de duplicación de ahorros, la Asociación procedió a dividir el dinero envuelto entre las dos (2) hijas menores de edad, producto del primer matrimonio con la Sra. Minerva Torres, y la viuda del cau-

sante, la Sra. Isabel Díaz Soto, en "partes iguales";(¹) ello, conforme expresa la Asociación, siguiendo la decisión emitida por este Tribunal en *Vda. de Méndez v. Tribunal Superior*, 102 D.P.R. 553 (1974).

Procede que se señale, y enfatice, que la Asociación consignó, en corte, la participación de las dos (2) menores de edad; consignación que el Tribunal Superior de Puerto Rico, Sala de Aibonito, luego de conceder a todas las partes envueltas la oportunidad de expresarse, calificó como "bien hecha", "relevando" a la Asociación en lo referente a los fondos consignados.

Habiéndose radicado una moción de retiro de fondos, por la representación legal de las dos (2) menores y su señora madre, y señalado el asunto ante juez distinto, se cuestionó por la representación legal de la primera esposa del causante y las hijas menores de edad el pago hecho por la Asociación a la viuda por concepto de seguro de vida y por la duplicación de ahorros y el hecho de que la cuota viudal usufructuaria se le satisficiera a ésta en efectivo. De hecho, la madre de las dos (2) hijas menores de edad, la Sra. Minerva Torres, solicitó del tribunal de instancia que le ordenara a la Asociación que consignara en el tribunal una suma igual a la cantidad de dinero que dicha Asociación ya le había satisfecho a la Sra. Isabel Díaz Soto en relación con el seguro de vida, el programa de duplicación de ahorros y la cuota viudal usufructuaria; alegándose que las únicas personas con derecho a ese dinero lo eran las dos (2) hijas menores de edad del causante y que la Asociación al pagarle dicho dinero a la señora Díaz Soto —*la suma total de once mil ochocientos diecinueve dólares con treinta y cuatro centavos ($11,819.34)*— había "pagado mal o erróneamente".

El tribunal de instancia, *sin celebración de vista alguna*, le ordenó a la Asociación que procediera a consignar, en el

---

(¹) A la viuda Isabel Díaz Soto la Asociación de Empleados del Estado Libre Asociado le computó de dicho dinero, y le pagó, la cuota viudal usufructuaria.

término de quince (15) días, la suma total de dinero antes mencionada. La Asociación solicitó reconsideración de dicha orden; la misma no obtuvo reacción alguna del tribunal de instancia. Inconforme, la Asociación recurrió ante este Tribunal —vía *certiorari*— en revisión de la referida orden, imputándole al dicho foro haber errado:

> ...al dictar una orden de consignación de dinero a base de unas alegaciones generales, contrarias a lo que constituye el derecho aplicable a los hechos del caso, y sin una vista evidenciaria en la que las partes presentaran prueba sobre sus alegaciones. Petición, pág. 4.

Mediante Resolución de 15 de julio de 1993, una Sala Especial de Verano le concedió término a la parte recurrida para que mostrara causa por la cual este Tribunal no debería expedir el auto solicitado y dictar sentencia revocatoria de la orden recurrida, devolviendo el caso al foro de instancia "con instrucciones para que dicho foro celebre una vista evidenciaria donde deberá recibir, y aquilatar, la prueba que a bien tengan presentar las partes" en apoyo de sus respectivas posiciones. Resolución de 15 de julio de 1993. Dicha parte ha comparecido. Resolvemos.

## I

En *Vda. de Méndez v. Tribunal Superior*, ante, este Tribunal expresó que, estando regulado el seguro de vida de un miembro o socio de la Asociación por la ley creadora de la referida Asociación, dicho seguro queda "por tanto fuera del ámbito del Código de Seguros". En consecuencia, se resolvió que, *en ausencia de designación de beneficiarios*, y tratándose "de un bien adquirido por el marido mediante la inversión de fondos gananciales, sin que haya en la voluntad del comprador del seguro ni en ningún otro factor relevante germen de impugnación a la presunción de gananciialidad enunciada por el Art. 1307 del Código Civil (31 L.P.R.A. sec. 3647), *debe considerarse el im-*

*porte de esta póliza como parte del caudal de la sociedad de gananciales extinguida por muerte del asegurado y bajo esta premisa procederse a su distribución". Vda. de Méndez v. Tribunal Superior*, ante, pág. 557.

Si ello es así en cuanto al seguro de vida que compra un socio de la Asociación, *no vemos razón alguna porque no se debe aplicar el mismo razonamiento en cuanto al programa de duplicación de ahorros.* En esta situación, *con mayor razón.* Los ahorros que hace el socio de la Asociación provienen, de ordinario, del salario que percibe como empleado público. Dicho salario, como sabemos, es ganancial por lo que, al igual que en el caso del seguro de vida, *y en ausencia de designación de beneficiarios,* el producto de esos ahorros debe ser distribuido teniendo en mente su carácter de ganancial. Véanse: Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641; *García v. Montero Saldaña,* 107 D.P.R. 319 (1978).

No erró, por tanto, *en principio* la Asociación al estimar que debía dividirse "en partes iguales" el producto del seguro de vida, y el producto del programa de ahorros, entre la viuda del causante, Sra. Isabel Díaz Soto, y las dos (2) hijas menores de edad de su primer matrimonio. *Ahora bien,* conforme los hechos que hemos podido colegir de los autos, era posible que la primera esposa del causante Rosario Medina pudiera haber tenido, *aun cuando ínfima,* una participación en el producto del seguro de vida y del programa de ahorros. Recordemos que aparentemente Rosario Medina aportó, o pagó primas, durante cuatro (4) meses estando casado con su primera esposa. *Por otro lado, no* está claro la fecha en que Rosario Medina comenzó a aportar al programa de ahorros; ésto es, es posible que así lo hiciera estando casado con su primera esposa, la Sra. Minerva Torres. *Ello no obstante,* el momento para que la Sra. Minerva Torres reclamara dichos créditos lo fue en ocasión de la división de los bienes gananciales, luego de haberse divorciado de Rosario Medina; división que presumimos se

hizo por sentencia judicial. De no haberlo así reclamado entonces en dicho procedimiento, posiblemente le sería oponible ahora la defensa de cosa juzgada. Véanse: Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343; *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940 (1972); *Díaz Maldonado v. Lacot*, 123 D.P.R. 261 (1989).

■   · Por último, somos del criterio que en situaciones —*como la presente*— en donde están envueltos menores de edad y el producto de la póliza y/o del programa de duplicación de ahorros se reputa ganancial por no haber designación de beneficiarios, la Asociación *no* debe proceder a pagar, *en efectivo y por adelantado*, la cuota viudal usufructuaria del dinero producto del seguro de vida y del programa de ahorros. La suma a que, por ese concepto en específico, pueda tener derecho la viuda puede variar, o verse afectada, por los restantes bienes, deudas y demás obligaciones del caudal hereditario. Véanse: Arts. 761–766 del Código Civil, 31 L.P.R.A. secs. 2411–2416. En esa clase de situación, la Asociación cumple mejor su cometido si consigna en el Tribunal todo el dinero envuelto y deja que sea el foro judicial el que resuelva qué participación le corresponde a los menores y qué le corresponde a la viuda; decisión que podrá hacer el foro judicial teniendo un cuadro más completo de la situación, en general, del caudal hereditario.

Por las razones antes expresadas, *se expide el auto y se dicta sentencia revocatoria de la orden emitida por el Tribunal Superior de Puerto Rico, Sala de Aibonito; devolviéndose el caso a dicho foro con instrucciones de que celebre una vista evidenciaria en la cual las partes tengan la oportunidad de presentar la prueba, argumentos y defensas que entiendan procedente en apoyo de sus respectivas posiciones, luego de lo cual resolverá conforme a derecho.*

El Juez Asociado Señor Negrón García no intervino.